Filed 2/8/21  P. v. Ephriam CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KACEY GERARD EPHRIAM,<br><br>    Defendant and Appellant. | B301996<br><br>(Los Angeles County<br>Super. Ct. No. SA002348) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark E. Windham, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Lynne G. McGinnis and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

————————

Kacey Gerard Ephriam appeals from a postjudgment order summarily denying his petition for resentencing under Penal Code section 1170.95[1] as to his first degree murder conviction. Ephriam contends his petition stated the necessary elements for eligibility for relief and the trial court erred in summarily denying his petition. Because the record of conviction shows Ephriam aided and abetted the commission of the murder with the intent to kill, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Killing*

In November 1989 John Long owned an apartment building where Ephriam's brother Kerry lived.[2] Kerry owed more than $2,000 in back rent, and Long had threatened him with eviction. Ephriam told his cousin Michael Valentine that he wanted his help to kill Long so Kerry could live in the apartment rent free. Ephriam explained he could not do the job himself because Long would recognize him. Ephriam gave Valentine a long-barreled .38-caliber revolver and told him to hold it for him.

Valentine told his friend Glenn Ray Calhoun, whom he had met in prison, that Valentine was planning a "jack move" (a plan to commit a robbery) of a man he believed would be carrying more than $5,000 in cash to an apartment building. Valentine

---

[1] All statutory references are to the Penal Code.

[2] The summary of facts is drawn from our prior nonpublished opinion in *People v. Ephriam* (June 18, 1997, B093742) (*Ephriam I*).

told Calhoun to pick him up at his home the next day, November 8, 1989, at noon.

At 9:00 a.m. on November 8, 1989 Ephriam and Valentine left Valentine's apartment in an Oldsmobile that belonged to Ephriam's mother. Valentine took the revolver, and Ephriam said they were going to Kerry's apartment.

At 1:00 p.m. that day Long told his wife he was leaving to go to the apartment building to collect rent from Kerry, and he left his house in his Mercedes-Benz.

Calhoun went to Valentine's apartment between 1:30 and 2:30 p.m., but neither Valentine nor Ephriam was there, so he left and returned a little later. On his return, Calhoun saw Valentine walk out of the alley behind the apartment building, wearing gloves and carrying a briefcase and watch. The two entered Valentine's apartment, and Valentine told his girlfriend he needed the keys to their car, a Dodge Aries. When she began arguing, he told her not to argue with him "because he got a man out here in the trunk of a car." Calhoun went down to the alley and saw Ephriam, also wearing gloves, standing by the Oldsmobile with its engine running. A Mercedes-Benz was parked on the other side of the alley.

When Valentine came down from the apartment with the keys to the Dodge Aries, which was also parked in the alley, Valentine went to the Mercedes-Benz and opened the trunk. He removed some tools and put them in the trunk of the Dodge Aries. When Calhoun asked Valentine how they got a man into the trunk of a car, Valentine responded he "beat the fucking hell out of him." Calhoun did not see a body in the trunk of the Mercedes-Benz; he never looked inside the trunk of the Oldsmobile.

Calhoun, Valentine, and Ephriam returned to the apartment courtyard, where Ephriam told Valentine, "[L]et's go and handle this." Valentine said to Ephriam, "[Y]ou two movers already put me up on the move when there was only $21 that was involved." Valentine told Ephriam to "take [Long] up in the mountains and smoke him, pour gas on him and set his ass on fire." Valentine gave Ephriam the .38-caliber revolver, and Ephriam left in the Oldsmobile. Valentine left in the Mercedes-Benz, and Calhoun followed in his own vehicle. Valentine and Calhoun spent the next several hours visiting friends. Valentine gave Calhoun a wallet containing Long's identification and credit cards.

Ephriam returned to Valentine's apartment that afternoon and again between 6:00 and 7:00 that evening, but Valentine and Calhoun were not there. On his second visit, Ephriam used the telephone of Valentine's sister-in-law Bridgette Sykes, who lived next door. Sykes overheard Ephriam say to his brother, "[T]hat's all right, we going to go on and do it. We fixing to do it."

Around 6:50 p.m. Clinton Harris was driving and saw a fire on a blocked-off street west of Los Angeles International Airport. Harris, who worked as a driver for the Los Angeles Unified School District, approached the fire and parked behind a car with a man inside. Another man was walking around the fire. When Harris realized a man was on fire, he radioed the school police and used his fire extinguisher to douse the fire. The parked car in front of Harris's car drove off.

Police and paramedics arrived on the scene. Through fingerprint analysis, the body was identified as Long's. An autopsy showed Long had been beaten with fists or a blunt instrument, his hands and feet had been bound, and he had been

4

gagged with duct tape.  Long had suffered from asphyxiation, was shot at close range through the right upper back, and had been set on fire.

The next day Sykes overheard Ephriam say that he and Valentine had tied up a landlord, they "kidnapped the man away from the apartment," and Ephriam put the man in the trunk of his mother's car.  Ephriam further boasted that he had shot and set the man on fire and "Kerry ain't got to worry about paying no rent for about another six or seven months."  When later asked about the Mercedes-Benz, Ephriam responded, "If it ain't [got] no fingerprints, how they gonna find out. . . .  I had on gloves. . . .  I always wear gloves when I do something."  Sykes later called the police, and Ephriam and Valentine were arrested.

B.      *The Jury Instructions, Verdict, and Sentencing*

Ephriam was charged with first degree murder (§ 187, subd. (a); count 1), kidnapping for robbery (§ 209, subd. (b); count 2), second degree robbery (§ 211; count 3), and grand theft of an automobile (§ 487; count 4.)[3]  The information also specially alleged the murder was committed while Ephriam was engaged in a robbery or kidnapping (§ 190.2, former subd. (a)(17)(i), (ii)); Ephriam was personally armed with a firearm (§ 12022.5, subd. (a)); and a principal was armed with a firearm (§ 12022, subd. (a)(1)).

The trial court instructed the jury on three theories: premeditated murder, felony murder committed in the course of a robbery, and felony murder committed in the course of a

---

[3]      The trial court dismissed the count for grand theft of an automobile.

5

kidnapping. The court provided the jury with verdict forms for each of the crimes and special allegations, including as to the kidnapping-felony-murder special circumstance, whether "in the murder of John Long the defendant . . . was the actual killer or, with the intent that John Long be killed, was a co-conspirator with, or aided and abetted the actual killer, while the said defendant was engaged in the commission of the crime of kidnapping in violation of Penal Code Section 207 . . . ."

The court instructed the jury as to the sequence of its findings that as to the murder count its first task was to decide on Ephriam's guilt or innocence; then if guilty, whether the killing was first or second degree; then if it found the murder was first degree murder, to make findings on the kidnapping and robbery special-circumstance allegations. The court instructed the jury, "So, again, if you follow the instructions in sequence, you will get instructions that tell you under what circumstances you stop or under what circumstances you continue on."

The trial court also provided the jury with an additional "special findings" verdict "[t]o to be completed ONLY if the defendant has been found guilty of murder of the first degree . . . ." This verdict form stated as follows: "We the jury fixed the murder as of the first degree based on our unanimous finding: [¶] 1) That the killing was wil[l]ful, deliberate and premeditated. [yes or no] [¶] 2) That the killing occurred in the perpetration of a kidnapping . . . . [yes or no] [¶] 3) That the killing occurred in the perpetration of a robbery . . . . [yes or no]."

The court instructed the jury as to this verdict form, "Now, with respect to that special findings, in the event you find the defendant guilty of murder of first degree, it can be found to be murder of the first degree on one, two, or three different theories.

6

That is, it may be only on the basis of one, it may be only on the basis of two, or it may be on the basis of all three.  [¶]  The first theory being that it was willful, deliberate and premeditated as covered in the instructions.  The second, that it occurred in the perpetration of a kidnapping as covered in the instructions.  And third that the killing occurred in the perpetration of a robbery as covered in the instructions."

The jury found Ephriam guilty of first degree murder and found true the kidnapping special circumstance allegation.  In making its kidnapping-felony-murder special-circumstance finding, the jury found true Ephriam "was the actual killer or, with the intent that John Long be killed, was a co-conspirator with, or aided and abetted the actual killer."[4]  The jury found the

---

[4]     When Ephriam committed the murder in 1989, in order to find the kidnapping-felony-murder special circumstance true, the jury had to find the defendant had the intent to kill. (§ 190.2, former subd. (b); *People v. Solis* (2020) 46 Cal.App.5th 762, 773.) As the Court of Appeal explained in *People v. Solis*, in 1990 "Proposition 115 amended section 190.2 to require a sentence of death or life in prison without the possibility of parole for a person who is not the actual killer as follows: '(c) Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in subdivision (a) of this section has been found to be true under Section 190.4. [¶]  (d) Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony

7

robbery special-circumstance allegation not true. On the special findings verdict form the jury answered "yes" that "the killing was wil[l]ful, deliberate and premeditated," but it answered "no" to the questions whether "the killing occurred in the perpetration of a kidnapping" and "the killing occurred in the perpetration of a robbery." The jury also convicted Ephriam of simple kidnapping and second degree robbery. The jury found as to all counts a principal was armed with a firearm during the commission of the crimes, but it found not true that Ephriam personally used a firearm.

The trial court sentenced Ephriam for special circumstance murder to a life term without the possibility of parole, plus one year for the principal armed enhancement. The court imposed and stayed an aggregate 11-year term on the kidnapping and robbery counts.

C. *Ephriam I*

On appeal Ephriam argued the jury's verdict was inconsistent because the jury found the kidnapping-felony-murder special-circumstance finding true but answered "no" on the special findings verdict form to the question whether the killing occurred in the perpetration of a kidnapping. We rejected this contention, explaining, "The jury followed the instructional

―――――――――

enumerated in paragraph (17) of subdivision (a) which felony results in the death of some person or persons, who is found guilty of murder in the first degree therefor, shall suffer death or confinement in state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4.'" (*Ibid.*)

8

sequence imposed by the court and determined appellant guilty of first degree murder before it answered special questions as to the basis for its finding of guilt. It answered the questions in a manner which was consistent with a determination of first degree murder. The jury's true finding on the kidnap-murder special circumstance was not impaired because the special questions were not intended nor structured to test the application of the felony murder doctrine. That determination was made in the manner provided by law through the submission of special circumstance findings to the jury as part of the general verdict. The sentencing consequence imposed by law thus followed upon the jury's true finding on the kidnap-murder special circumstance which was returned on the verdict form." (*Ephriam I, supra*, B093742, fn. omitted.) We also found substantial evidence supported the special circumstance finding. (*Ibid.*)

D.    *Ephriam's Petition for Resentencing*

On January 8, 2019 Ephriam, representing himself, filed a form petition for resentencing and supporting declaration seeking to vacate his murder conviction and to be resentenced in accordance with recent statutory changes relating to accomplice liability for murder. In his petition, Ephriam declared he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019"; he "was not the actual killer"; he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; he "was not a major participant in the felony or  . . . act with reckless indifference to human life during the course of the crime or felony" (underscoring and boldface omitted); and "[t]here has been a prior determination by a court or jury that [he] was not a

9

major participant and/or did not act with reckless indifference to human life . . . ."

In their response, the People argued Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) was unconstitutional, and in any event, Ephriam was ineligible for relief because in finding the special circumstance allegation true, the jury found Ephriam was either the actual killer or acted with the intent to kill. The trial court appointed an attorney for Ephriam, and the attorney filed a reply arguing Senate Bill 1437 was constitutional and the People had not met their burden to prove Ephriam was ineligible for relief because the verdicts and special findings were inconsistent.

On October 2, 2019 the superior court summarily denied Ephriam's petition for resentencing.[5] The trial court stated in its order, "The court has no obligation to hold an evidentiary hearing where the petitioner's eligibility or ineligibility for relief is evident as a matter of law. [Citation.] Petitioner is not eligible for relief under Penal Code § 1170.95 because the jury found a specific intent to kill with its 'True' verdicts on the special circumstances allegations. The purported inconsistency of the verdicts was dispelled by the [o]pinion of the Court of Appeal in this case, filed June 18, 1997 . . . ."

---

[5] Judge Mark E. Windham ruled on the petition. Judge Leslie W. Light presided over the trial but retired in 2009.

10

# DISCUSSION

A.      *Senate Bill 1437*

On September 30, 2018 Senate Bill 1437 was signed into law, effective January 1, 2019.  Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 1; see *People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 325 (*Verdugo*), review granted Mar. 18, 2020, S260493.)

To accomplish this purpose, the Legislature added section 188, subdivision (a)(3), and section 189, subdivision (e).  (*Gentile*, *supra*, 10 Cal.5th at pp. 842-843.)  New section 188, subdivision (a)(3), effectively "eliminates natural and probable consequences liability for murder regardless of degree."  (*Gentile*, at pp. 847-848.)  New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."  New section 189, subdivision (e), in turn, limits the exception to the malice requirement under the felony-murder rule to circumstances where the People prove the defendant "was a major participant in the underlying felony and

acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[6]

Senate Bill 1437 also provides a procedure in new section 1170.95 for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189. (Sen. Bill 1437 (2017-2018 Reg. Sess.) § 4; see *Gentile*, *supra*, 10 Cal.5th at p. 847.) Section 1170.95, subdivision (b)(1), provides that the petition "shall be filed with the court that sentenced the petitioner." The petition must include a declaration by the petitioner stating he or she is eligible for relief under the section, providing the superior court case number and year of the conviction, and indicating whether he or she requests the appointment of counsel. (§ 1170.95, subd. (b)(1).)

"If the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue: 'The court shall review the petition and determine if the petitioner has

---

[6] New section 189, subdivision (e), provides, "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.'" (*Verdugo, supra*, 44 Cal.App.5th at p. 327, review granted; accord, *People v. Perez* (2020) 54 Cal.App.5th 896, 903 (*Perez*), review granted Dec. 9, 2020, S265254; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165 (*Nguyen*); *People v. Tarkington* (2020) 49 Cal.App.5th 892, 900-901 (*Tarkington*), review granted Aug. 12, 2020, S263219; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 123, review granted Nov. 10, 2020, S264684 [once the trial court determines the petition contains the required information, the court performs a single prima facie review, and if the defendant makes a prima facie showing of entitlement to relief, the court issues an order to show cause].)

"In determining whether the petitioner has made a prima facie showing that he or she is entitled to relief under section 1170.95, subdivision (c), '[t]he trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing.  Just as in habeas corpus, if the record "contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner." [Citation.] However, this authority to make determinations without

conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . .'" (*Perez, supra*, 54 Cal.App.5th at pp. 903-904, review granted, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980; accord, *Nguyen, supra*, 53 Cal.App.5th at p. 1166.)

After issuing an order to show cause, the trial court must hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) If a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *Tarkington, supra*, 49 Cal.App.5th at pp. 898-899, review granted; *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.)[7]  The prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)

---

[7]     The Supreme Court in *People v. Lewis* limited briefing and argument to the following issues:  "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?  (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)[?]"  (Supreme Ct. Minutes, Mar. 18, 2020, p. 364; *People v. Lewis, supra*, 43 Cal.App.5th 1128, review granted.)

B.    *Ephriam Is Ineligible for Relief as a Matter of Law*

Ephriam contends the trial court erred in relying on the kidnapping-felony-murder special-circumstance finding to summarily deny his petition for resentencing because it was inconsistent with the jury's special finding "specifically *reject[ing]* the allegation of special circumstances."  According to Ephriam, the alleged inconsistency in the jury's verdict shows the jury found "the intent to kill was formed early on, then dissipated by the time the victim was accosted by the perpetrators; then re-formed contemporaneous with or after the killing."  Ephriam contends the trial court should have therefore set an order to show cause "at which the prosecution would have been required to prove beyond a reasonable doubt, [Ephriam's] ineligibility for relief . . . i.e. that he was *not* found guilty on a 'natural, direct and probable consequences' theory."

Contrary to Ephriam's contention, the jury verdicts were not inconsistent in light of the order in which the jury was instructed to approach the guilty verdict, special circumstance findings, and special findings.  As discussed, the jury was instructed first to decide whether Ephriam was guilty of murder, and if so, to determine whether it was first degree murder; then if it found the murder was first degree, to make a finding whether the robbery and kidnapping special circumstance allegations were true.  Consistent with these instructions, the jury found Ephriam guilty of first degree murder, and it found the kidnapping-felony-murder special-circumstance allegation true, finding Ephriam "was the actual killer or, with the intent that John Long be killed" was a coconspirator or aider and abettor. The jury was instructed further that if it found Ephriam guilty of first degree murder, it had to return a special finding whether it

15

based its first degree finding on premeditation, felony kidnapping, or felony robbery. The jury responded in the special findings verdict form that it based its first degree murder finding on a unanimous finding "[t]hat the killing was wil[l]ful, deliberate and premeditated." The fact the jury explained it based its first degree murder finding on the premeditation theory did not mean the jury could not have based its finding on an alternative theory—felony murder—but it did not. As we concluded in *Ephriam I* in rejecting Ephriam's argument the verdict forms were inconsistent, "We do not find in the jury's response to the special questions that it intended to undo its kidnap-murder special circumstance finding nor that it viewed its special finding as inconsistent with its kidnap-murder special circumstance finding. The jury, as permitted by the instructions, simply discontinued further deliberations when it answered affirmatively on one of the available bases for a first degree murder determination." (*Ephriam I, supra*, B093742.) Further, "[t]he jury's true finding on the kidnap-murder special circumstance was not impaired because the special questions were not intended nor structured to test the application of the felony murder doctrine." (*Ibid.*)

As we explained in *Verdugo, supra*, 44 Cal.App.5th at page 333, review granted, "[a] court of appeal opinion, whether or not published, is part of the appellant's record of conviction. [Citations.] Accordingly, it was proper for the superior court to consider this court's opinion . . . in determining whether [defendant] had made a prima facie showing of eligibility for relief under section 1170.95 or whether he was ineligible for relief as a matter of law." (See *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491 ["'The decision of an appellate court, stating a

16

rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.'"].)[8]

Further, the Supreme Court observed in *People v. Anderson* (1987) 43 Cal.3d 1104, 1142, superseded by statute as stated in *People v. Mil* (2012) 53 Cal.4th 400, 408-409, that the 1978 version of section 190.2, former subdivision (b) (in effect in 1989), provided "a special rule for a certain class of first degree murderers: if the defendant is guilty as an aider and abet[o]r, he must be proved to have acted with intent to kill before any special circumstance (with the exception of a prior murder conviction) can be found true."[9]  Consistent with this section, in

---

[8]  Ephriam's reliance on *People v. Martinez* (2019) 31 Cal.App.5th 719 is misplaced.  The *Martinez* court did not address the conclusive effect of a Court of Appeal opinion, deciding only that a defendant may only obtain the ameliorative benefits of Senate Bill 1437 by filing a section 1170.95 petition in the trial court seeking retroactive relief.  (*Martinez*, at p. 722.)

[9]  Section 190.2, former subdivision (b), as codified in 1989, provided, "Every person whether or not the actual killer found guilty of intentionally aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in paragraph[] . . . (17) . . . of subdivision (a) of this section has been charged and specially found under Section 190.4 to be true."  Section 190.2, former subdivision (a)(17)(ii), provided as to the kidnapping-felony-murder special circumstance, "The murder was committed while

finding the kidnapping-felony-murder special-circumstance allegation true, the jury specifically found Ephriam was the actual killer or acted with the intent Long be killed. The superior court therefore properly found the jury's finding Ephriam had the intent to kill Long precludes relief as a matter of law. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 325, review granted.)

## DISPOSITION

The order denying Ephriam's petition for resentencing under section 1170.95 is affirmed.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J

---

the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felonies: [¶] . . . [¶] (ii) Kidnapping in violation of Sections 207 and 209."